O’NIELL, Chief Justice.
 

 The appellant, Ben Chevallier, was prosecuted for the murder, of one Ernest Pritchard, was convicted of manslaughter and sentenced to imprisonment in the penitentiary for ten years. He reserved six bills of exception during the trial but has abandoned four of them.
 

 One of the two bills that have not been abandoned has reference to a ruling of the judge sustaining an objection made by the prosecuting attorney to a question propounded by the attorney for the defendant to a witness for the state, on cross-examination. The witness, Mrs. Geneva Pritchard, a sister-in-law of the deceased, was present during the fatal difficulty. It occurred just outside the door of a barroom, in which the parties had been drinking. Ernest Pritchard was very drunk and quarrelsome, and his father, John Pritchard, was escorting him out of the barroom trying to quiet him. The objection to the question propounded to Mrs. Pritchard arose when the defendant’s attorney attempted to prove by her what John Pritchard said to his son, Ernest, while escorting him out of the barroom. The reason for the objection was not stated at the time when it was made, but the record discloses that the objection was that the statement of John Pritchard to his son was not a part of the res gestae. The statement was, as subsequently related by John Pritchard in his testimony: “Go on and be quiet.”
 

 There are two reasons why the judge’s ruling was not harmful to the defendant. The first of these reasons is that, although Mrs. Pritchard testified that she heard John Pritchard say something to his son Ernest
 
 *531
 
 immediately before the shooting, she testified also that there were so many of them talking at the time that she could not remember what any of them said.
 

 The second reason why the judge’s ruling, sustaining the objection to the question propounded by the defendant’s attorney to the witness, Mrs. Pritchard, was not harmful to the defendant is that John Pritchard himself, afterwards, on cross-examination, related what he had said to his son Ernest at the time when he escorted him out of the barroom. He testified that Ernest was drunk and quarrelsome and that he, the father, told Ernest: “Go on and be quiet.” The purpose and the importance of proving that John Pritchard made that statement to his son immediately before the shooting was that it tended to prove that Ernest Pritchard was in a belligerent mood and was provoking the difficulty. The defendant received the benefit of the evidence directly from the witness, John Pritchard. It would not have added anything to the evidence. if Mrs. Geneva Pritchard, as a witness in the case, had remembered and had testified that she heard John Pritchard tell Ernest: “Go on and be quiet.” There is no merit in this bill of exceptions.
 

 The other one of the two bills of exception which have not been abandoned was reserved to the overruling of an objection made by counsel for the defendant to certain testimony given by the state’s witness, John Pritchard. He is the one who made the charge which resulted in the indictment of Ben Chevallier for the murder of Ernest Pritchard. John Pritchard, having been present during the fatal difficulty, was an important witness for the state. He testified over the defendant’s objection, on redirect examination, that he did not want to file a charge against Ben Chevallier, or to have a warrant issued for his arrest, until he, the witness, could make an investigation of the matter and “find out the whole story”; and that he made the investigation and, “after finding out the whole story,” filed the charge on which Ben Chevallier was indicted. The objection to the testimony was that the witness, John Pritchard, was allowed to state to the jury his opinion — founded, not upon the information which he had gained as a witness to the fatal difficulty, but upon that which he gained afterwards from other persons in his investigation of the case — that Ben Chevallier was guilty of murder.
 

 The attorneys for the appellant rely upon the decision rendered in State v. Borde, 209 La. 905, 25 So.2d 736, 739, which supports their bill of exceptions exactly. In the case cited, Borde was prosecuted for a capital offense and was found guilty without capital punishment. We set aside the verdict on two grounds, one of which was that a deputy sheriff, as a witness for the state, was allowed, to testify, over the defendant’s objection, that as a result of an investigation made by him, the deputy sheriff, after the defendant was arrested, he was not released from custody. In sustaining
 
 *533
 
 the objection, the author of the opinion stated:
 

 “Such testimony is immaterial and irrelevant to the issues of the case and could have no other effect than to convey to the jury the witness’ belief that the defendant was the guilty party, contrary to our jurisprudence that a witness is never allowed to express an opinion or suspicion as to the guilt or innocence of an accused. State v. Robertson, 111 La. 35, 35 So. 375; State v. Bessa, 115 La. 259, 38 So. 985; State v. Vinzant, 200 La. 301, 7 So.2d 917; 2 Wharton’s Criminal Evidence 1658, Sections 944 and 945; Underhill’s Criminal Evidence 429, Section 230; and 20 Am.Jur. 633, Section 763.”
 

 In the instant case the prosecuting attorney, in questioning the witness, John Pritchard, in such a way as to show that Pritchard’s opinion of the guilt of Ben Chevallier was founded upon facts which the witness had obtained from other persons in the investigation which he made subsequent to the killing, assumed that the witness had testified already that he did not want to have a warrant issued for the arrest of Ben Chevallier until he, the witness, would make an investigation and “find out the whole story.” But the prosecuting attorney was mistaken in assuming that the witness had so testified. The prosecuting attorney prefaced his questioning of the witness, John Pritchard, on re-direct examination, thus:
 

 “Q. In response to questioning you said you didn’t want to have a warrant issued until after you found out the whole story— what was the whole story? A. I found out all about it later.
 

 “Q. What was it?”
 

 Here counsel for the defendant objected to the witness’ relating what he had found out in his investigation of the case, and the judge sustained the objection. But immediately thereafter the prosecuting attorney propounded the question which showed that the opinion which the witness had formed was founded upon the investigation which he had made subsequent to the homicide— thus:
 

 “Q. You didn’t [needn’t] say what you found out, but after finding it out, after your investigation, did you file charges ? ”
 

 Here the defendant’s counsel objected; the objection was overruled; and the witness answered: “Yes.”
 

 All of the testimony given by the witness, John Pritchard, was taken down steno-graphically and is attached to the bill of exceptions. It leaves no doubt that the prosecuting attorney was mistaken in assuming, when he began his re-direct examination of the witness, that he had testified already — presumably on cross-examination — that he didn’t want to have a warrant issued for the arrest of Ben Chevallier until he, the witness, could make an investigation and find out “the whole story.” Except in his answer to the question propounded by the prosecuting attorney on redirect examination of the witness, the lat
 
 *535
 
 ter did not at any time say that he did not want to have a warrant issued for the arrest of Ben Chevallier without first making an investigation and finding out the whole story.
 

 The judge, in his per curiam, attached to this bill of exception, reveals that he misunderstood the objection. His understanding, as shown by his per curiam, was that counsel for the defendant objected merely to the allowing of the witness to testify to the fact that he filed the charge against Ben Chevallier. Under that belief, the judge overruled the objection for the reason that it could cause no harm to the defendant for the witness merely to verify the fact, which the record itself showed, that the witness was the one who had filed the charge against Ben Chevallier. The per curiam reads as follows:
 

 “It should be observed that the witness was permitted to testify only to the fact that he filed charges. While it is true the record itself would be the best evidence of this fact, a verification thereof by the signer of the affidavit himself could in no way injure the cause of the accused.”
 

 The'objection to the testimony was, not that it showed who filed the charge against the defendant, but that it showed that the party who filed the charge based his conclusion as to the defendant’s guilt, not upon facts which he learned as a witness to the fatal difficulty, but upon facts which he learned from other persons in the investigation which he, the witness, made subsequent to the killing. Our conclusion is that this bill of exception is sustained by the ruling in State v. Borde, 209 La. 905, 25 So.2d 736.
 

 The verdict and sentence are annulled and the case is ordered remanded to the district court for a new trial.
 

 HAMITER and HAWTHORNE, JJ., dissent.